**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**MIHIRKUMAR PRAJAPATI,**

**Plaintiff,**

**v.**

**Secretary, U.S. Department of Homeland Security, et al.,**

**Defendants.**

**Case No. 1:25-cv-858**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Litkovitz**

## OPINION AND ORDER

Plaintiff Mihirkumar Bhikhabhai Prajapati sued the Secretary of the Department of Homeland Security (DHS), the United States Attorney General, and United States Citizenship and Immigration Services (USCIS) Directors Joseph Edlow and Laura Zuchowski under the Administrative Procedure Act (APA) and the Mandamus Act for unreasonable delay in processing his U visa application. For the reasons explained below, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's Complaint.

## BACKGROUND

### A. The U Visa Program

Congress passed the Victims of Trafficking and Violence Protection Act of 2000 authorizing DHS to grant visas to noncitizen victims of serious crimes who cooperate with law enforcement. 8 U.S.C. §§ 1103(a)(1), 1101(a)(15)(U). The U visa program "strengthen[s] the ability of law enforcement agencies to detect, investigate and prosecute [crimes] … committed against aliens, while offering protection to victims of

such offenses in keeping with the humanitarian interests of the United States." Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386 § 1513(a)(2)(A), 114 Stat. 1464, 1533 (2000).

Congress limited DHS to issuing 10,000 U visas each year, 8 U.S.C. § 1184(p)(2)(A), and "USCIS has met the statutory cap for U visas every year since 2010," (Defs.' Mot., Doc. 7, #40). Petitioners who would qualify for a U visa but for the 10,000-person cap "must be placed on a waiting list" per DHS regulations. 8 C.F.R. § 214.14(d)(2). Those on the waitlist can receive two important benefits: (1) employment authorization; and (2) deferred action from removal. *Id.* But, again, that applies only to those whose applications would in fact qualify them for a U visa. So before adding someone to the waitlist, USCIS must make that determination. But that created a separate problem. Faced with rising numbers of U visa petitions, waitlist determinations (WLDs) themselves became backlogged, meaning that petitioners who might qualify for those temporary benefits were in limbo while USCIS caught up. (*See* Doc. 7, #42).

In response to that problem, USCIS implemented the bona fide determination (BFD) process in 2021. This was meant to streamline the process for granting temporary benefits. Essentially, under the BFD process, USCIS merely takes a quick look at the petition to see whether it is at least facially acceptable. *See* USCIS, *Policy Alert* (June 14, 2021).[1] So, as things stand, U visa petitioners are eligible for

[1] Available at: https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20210614-VictimsOfCrimes.pdf [https://perma.cc/2FW2-7AT3].

temporary benefits "via two, distinct tracks," either through the WLD process or the BFD process. *Barrios Garcia v. DHS*, 25 F.4th 430, 439 (6th Cir. 2022).

How does that work in practice? Given the backlog on the WLD track, USCIS starts with the BFD process. That is, after USCIS receives an I-918 application for a U visa, it first determines whether the petition is bona fide. If USCIS concludes that it is, the agency puts the petitioner on the BFD Employment Authorization Document (EAD) track. Then, as the next step in that process, USCIS decides whether to issue the petitioner an EAD and deferred action. If USCIS grants the EAD and deferred action, the petitioner receives these benefits pending full adjudication of their U visa application.

By contrast, if USCIS decides not to issue these benefits, the agency (1) switches the petitioner to the waitlist track (i.e., the WLD track), (2) notifies the petitioner of its BFD EAD decision and initiation of waitlist adjudication, and (3) conducts a WLD (although when that determination actually occurs is not entirely clear). As discussed above, if the WLD results in USCIS adding the petition to the waitlist, the petitioner is also eligible for employment authorization and deferred removal. But petitions deemed ineligible for the waitlist are denied. *See id.* at 438–39 (citing Policy Manual, Vol. 3, Part C, Ch. 5, Appendix: Bona Fide Determination Process Flowchart).[2] And while the petitioner awaits that decision, he or she is simply in limbo.

[2] Available at: https://www.uscis.gov/sites/default/files/document/policy-manual-resources/Appendix-BonaFideDeterminationProcessFlowchart.pdf [https://perma.cc/L7DL-AW6R].

### B. Plaintiff's U Visa Petition

On April 19, 2024, Indian national Mihirkumar Bhikhabhai Prajapati was the victim of a serious crime in Cincinnati. Prajapati cooperated with the Delhi Township Police Department's investigation of the crime, which resulted in an arrest and indictment. (Compl., Doc. 1, #1).

On February 11, 2025, based on that experience, Prajapati applied for a U visa. (*Id.* at #2).[3] USCIS confirmed receipt, (*id.* at #13), and later requested that Prajapati submit his biometrics, (*id.* at #15). Prajapati says he complied but nevertheless USCIS has not taken any action to move his bona fide U visa petition through the BFD, EAD, or WLD process since. (*See id.* at #8).

Nine months later, on November 21, 2025, Prajapati filed the complaint in this action. (Doc. 1). There he names the DHS Secretary, United States Attorney General, USCIS Director Edlow, and USCIS Director Zuchowski as defendants. (*Id.* at #1). He alleges that Defendants "have an obligation to issue, within a reasonable time, work authorization for individuals who have presented bona fide petitions for U nonimmigrant status," and that Defendants' delay in fulfilling this obligation "harmed [Plaintiff's] ability to maintain [his] livelihood and obtain authorization to work in the U.S." (*Id.* at #8).

On February 18, 2026, Defendants requested and were granted an extension of time to answer. (2/18/26 Not. Order). Defendants moved to dismiss Plaintiff's

[3] Plaintiff's Complaint alleges that he filed his U Visa application on October 7, 2025. (Doc. 1, #1–2). But, as the government points out, (Doc. 7, #43), Plaintiff's records show that USCIS received his application on February 11, 2025, (Doc. 1, #13). Therefore, the Court will treat February 11 as the receipt date.

complaint for failure to state a claim and lack of jurisdiction on March 16—thirteen months after Plaintiff filed his U visa petition. (Doc. 7). Plaintiff's response was due on April 9, 2026. That date has passed without action from Plaintiff, so this case is ripe for review.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up).

Moreover, pro se filings are "to be liberally construed," and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## LAW AND ANALYSIS

### A. The Court has Jurisdiction Over This Matter

Defendants halfheartedly argue that Congress "gave USCIS the discretion to administer [the U visa] process and any claims seeking to compel any actions are jurisdictionally barred." (Doc. 7, #53). But as Defendants concede, (*id.* at #45), binding

Sixth Circuit precedent rejected a nearly identical jurisdictional argument regarding unreasonable delay claims by U visa petitioners. *See Barrios Garcia*, 25 F.4th at 445 (holding that government's delay in adjudicating U visa petitioners' work authorizations is reviewable under the APA). Therefore, the Court finds that it has jurisdiction to review Plaintiff's unreasonable delay claims under the APA.

Moreover, "[w]hen a petitioner seeks both mandamus relief and relief under the APA, courts apply the same principles and standards both to determine jurisdiction and to assess the merits." *Huron Mountain Club v. U.S. Army Corp. of Eng'rs*, 545 F. App'x 390, 393 (6th Cir. 2013) (quoting *Nelson v. United States*, 107 F. App'x 469, 470 (6th Cir. 2004)). Thus, because the Court has jurisdiction to review Plaintiffs' claims under the APA, it also has jurisdiction to review the request for mandamus. *Id.*; *see Yu v. Brown*, 36 F. Supp. 2d 922, 928–30 (D.N.M. 1999).

### B. Plaintiff's Claim Survives Defendants' Motion to Dismiss

When resolving whether an agency action has been unreasonably delayed, federal courts consider the six factors identified in *TRAC v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Barrios Garcia*, 25 F.4th at 451–52 (citing *TRAC*, 750 F.2d at 80). Many of these factors are fact-intensive, generally making them a poor fit for a motion to dismiss. Indeed, in *Barrios Garcia* the Sixth Circuit reversed a lower court decision that had dismissed unreasonable delay claims brought by U visa petitioners. *See id.* at 451 (noting that unreasonable delay "sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage"); *see also Omar v. Blinken*, 756 F. Supp. 3d 520, 535 (S.D. Ohio 2024) ("District courts are split as to whether an unreasonable delay claim in this context is reviewable on the pleadings, or if it must be considered only after discovery.") (collecting cases).

Against that backdrop, and applying the *TRAC* factors to Plaintiff's allegations here, the Court declines to dismiss the case. A closer look at the various factors shows why.

**1. Factors Three and Five**

Start with the third and fifth factors, which address the effect the delay has on Plaintiff. The pro se complaint offers a single sentence describing the consequences of USCIS's delay in processing Plaintiff's U visa petition. Plaintiff alleges that the delay "harmed [his] ability to maintain [his] livelihood and obtain authorization to work in the U.S." (Doc. 1, #8). Standing alone, Plaintiff's bare allegation of economic harm does not amount to the kind of specific difficulties that tip these factors in a visa applicant's favor. *See Chhajed v. Jaddou*, No. 2:23-cv-483, 2024 WL 1332258 at

*7 (S.D. Ohio Mar. 27, 2024) ("incidental economic harm" insufficient for third and fifth factors to weigh in applicant's favor); *cf. Barrios Garcia*, 25 F.4th at 452 (allegations that delay affected interests in obtaining healthcare, car insurance, identification cards, and lawful employment weighed in visa petitioners' favor).

But the Sixth Circuit has found that the "risk [of] removal from the United States" and its attendant harms necessarily implicates weighty interests affecting health and welfare. *Barrios Garcia*, 25 F.4th at 452. And public records[4] show that Plaintiff received an order of removal on July 15, 2026, seventeen months since his visa application and eight months after filing his complaint. *Automated Case Information*, U.S. Dep't of Just., Exec. Off. of Immigr. Rev.[5] Therefore, the risk that Plaintiff "will be removed in the imminent future appears far from speculative." *Queiroz Gomes v. Bondi*, No. 25-cv-11964, 2026 WL 1815445, at *5 (D. Mass. June 24, 2026) (finding that removal orders weigh in visa applicant's favor for third and fifth *TRAC* factors) (collecting cases).

With that in mind, the Court finds that the third and fifth factors weigh in Plaintiff's favor.

---

[4] The Court may consider matters of public record in ruling on Fed. R. Civ. P. 12(b)(6) motions where the information contained therein is undisputed and from a reliable source, such as U.S. government websites. *See, e.g.*, *Demi's v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) (taking judicial notice of information listed on Federal Bureau of Prisons website); *Omar v. Blinken*, 756 F. Supp. 3d 520, 527 n.1 (S.D. Ohio 2024) (discussing visa petition process described on U.S. Department of State website).

[5] Available at: https://acis.eoir.justice.gov/en/caseInformation/ [https://perma.cc/7UYT-SWJ5].

**2. Factor One**

The first factor asks whether "the time agencies take to make decisions [is] governed by a rule of reason." *TRAC*, 750 F.2d at 80. On that front, courts typically find that a first-in, first-out process of adjudicating visa applications supplies a legitimate rule of reason, which in turn weighs against a finding of unreasonable delay. *Chhajed*, 2024 WL 1332258, at *5 (noting that courts "widely recognize[] [chronological review] as a legitimate rule of reason"). But, if a petitioner alleges that USCIS adjudicates newer applications *before* older ones, that would tend to show that there is not a chronological rule of reason, or at least that USCIS is not applying the rule "in a legitimate way, such that the time for adjudication is not *governed* by the purported rule of reason." *Id.* (citing *Thakker v. Renaud*, No. cv 20-1133, 2021 WL 1092269, at *6 (D.D.C. Mar. 22, 2021)); *see also Barrios Garcia*, 25 F.4th at 454 (prioritization of "later filed petitions over earlier filed petitions" adequately alleged no rule of reason).

Here, neither party identifies a "rule of reason" governing the U visa adjudication process. (Doc. 1; Doc. 7). Defendants suggest that Plaintiff's failure to address this issue in the complaint means that this factor weighs in their favor. (Doc. 7, #47). But it's hard to see why Plaintiff should bear the burden of describing the inner workings of USCIS review at this stage. *See Barrios Garcia*, 25 F.4th at 454 (finding that visa petitioners' lack of evidence for the first factor should not "terminate their suits at the motion-to-dismiss stage [because] at this point, the machinery of the U-visa and prewaitlist work-authorization adjudication processes is

known only to USCIS") (citation modified). And here, the government, which does have the information, does not argue that there *is* a rule of reason, having made no claims that USCIS employs a first-in, first-out approach—or has any other particular method to its madness—in reviewing U visa petitions.

Finally, in a previous reported decision, the Sixth Circuit found that U visa petitioners "adequately alleged that no rule of reason governs the U-visa-adjudication process" because USCIS does not make determinations based on the order in which U visa petitions are filed. *Id.* Maybe USCIS has since adopted a first-in, first-out approach. But because Defendants have not supplied a rule of reason that contradicts the Sixth Circuit's description, (Doc. 7, #48–49), the Court concludes that no rule of reason applies to the U visa adjudication process.

Therefore, the Court finds that the first factor weighs in Plaintiff's favor.

**3. Factor Two**

The second factor—whether Congress has indicated the "speed with which it expects the agency to proceed"—"gives content" to the first factor's "rule of reason." *See Mudiyanselage v. Edlow*, No. 2:26-cv-895, 2026 WL 2540114 at *9 (S.D. Ohio August 28, 2026) (citing *Afghan and Iraqi Allies v. Blinken*, 103 F.4th 807, 816 (D.C. Cir. 2024)). But "when no statute sets a deadline for an agency action, the second TRAC factor is not relevant to an unreasonable delay analysis." *Barrios Garcia*, 25 F.4th at 453 (citation modified).

Congress did not provide a specific deadline for U visa adjudication. Plaintiff concludes—without citing any authority—that USCIS must adjudicate his petition

within one year. (Doc. 1, #8). Defendants, by contrast, argue that, in the absence of a congressionally established timetable, the operative question is whether Plaintiff's wait exceeds those in case law and public records.[6] (Doc. 7, #47–48 (citing cases where courts found fifteen- and seventeen-month delays reasonable and noting nineteen-month average U visa adjudication time on USCIS website)).

Defendants' examples of allegedly acceptable delays miss the point. First, judicial precedent and empirical data don't reveal congressional intent, which is what this *TRAC* factor measures. *See TRAC*, 750 F.2d at 80. Second, as the Sixth Circuit noted:

> The average adjudication time says little about the unreasonableness of USCIS's delay in Plaintiffs' case; this number also does not alter how most (if not all) U-visa adjudications might be unreasonably delayed. We find it unhelpful to fixate on the average snail's pace when comparing snails against snails in a snails' race.

*Barrios Garcia*, 25 F.4th at 454.

The Court's discussion of this congressional-intent factor is further informed by the fact that the Sixth Circuit noted that "Congress has expressed that immigration-benefit applications should be adjudicated within six months." *Id.* (responding to government's argument that Congress did not provide a timeline for U visa applications); 8 U.S.C. § 1571(b) ("It is the sense of Congress that the

---

[6] It may be true that, as Defendants claim, USCIS will get around to processing Plaintiff's U visa petition in the "near future," (Doc. 7, #48), because 80% of U visas are processed within 19 months. *See id.*; *Case Processing Times*, USCIS, https://egov.uscis.gov/processing-times/ [https://perma.cc/56KJ-HWZ9] (showing that 80% of U visa petitions are processed within 21 months as of September 16, 2026). But the Court has no indication that USCIS has adjudicated Plaintiff's U visa petition or will do so imminently. To the contrary, it looks like an immigration judge ordered Plaintiff's removal while his visa petition was pending, heightening the importance of prompt adjudication. *See Automated Case Information*, *supra*.

processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application.”). While the Sixth Circuit admittedly did not state that the six-month benchmark supplies the congressional timeline for U visa adjudication, courts “have given the expectation at least some weight” in assessing the second *TRAC* factor. *Chhajed*, 2024 WL 1332258, at *6; *compare Ryan v. Dedvukaj*, No. 09-14178, 2009 WL 3809813, at *2 (E.D. Mich. Nov. 13, 2009) (describing the expectation as “merely a policy statement, worded in precatory terms” and noting it “does not create an obligation for [the government] to meet the 180-day deadline” in processing green card applications), *with Keller Wurtz v. United States Citizenship & Immigr. Servs.*, No. 20-cv-2163, 2020 WL 4673949, at *5 (N.D. Cal. Aug. 12, 2020) (noting that “USCIS is correct that this timeline is not mandatory, but it nevertheless weighs in favor of finding the [investor visa application] delay—approximately four times Congress’s stated goal—to be unreasonable”).

Because the Sixth Circuit specifically invoked this congressional statement in analyzing U visa delays—and Defendants have not distinguished it—the Court gives more weight to the six-month benchmark here. *Barrios Garcia*, 25 F.4th at 454. Plaintiff has awaited USCIS’s adjudication of his U visa petition for nineteen months. This significantly exceeds Congress’s general expectations, *id.*, so the second factor weighs in Plaintiff’s favor.

**4. Factor Four**

Under the fourth factor, Defendants argue that affording Plaintiff relief allows Plaintiff to jump the line in front of other visa applicants. (Doc. 7, #49–51). But no evidence in the record supports that inference at this preliminary stage. *See, e.g.*, *Omar*, 756 F. Supp. 3d at 536 (rejecting similar argument at the motion to dismiss stage); *see also Barrios Garcia*, 25 F.4th at 454 (same). Discovery may vindicate Defendants' position, but concluding so now would be inappropriate in evaluating a motion to dismiss.

Therefore, the fourth factor is neutral.

**5. Factor Six**

Plaintiff does not allege that Defendants acted in bad faith. (Doc. 1), so this factor is neutral.

On balance, the *TRAC* factors weight in Plaintiff's favor, suggesting dismissal is not warranted.

**CONCLUSION**

The Court has jurisdiction over Plaintiff's claims, and Plaintiff has alleged facts sufficient to survive a motion to dismiss. For the reasons discussed above, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 7).

**SO ORDERED.**

September 23, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**